UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JAMES LANE and DAWNA LANE,                    NO. CIV. 2:10-335 WBS GGH

        Plaintiffs,

    v.                                        MEMORANDUM AND ORDER RE:
                                              MOTIONS TO DISMISS

VITEK REAL ESTATE INDUSTRIES
GROUP dba VITEK MORTGAGE
GROUP, a California
corporation; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., a California
corporation; AURORA LOAN
SERVICES, INC., a Delaware
corporation; CITIMORTGAGE,
INC., a New York corporation;
CAL-WESTERN RECONVEYANCE
CORP., a California
corporation; and DOES 1 to
100, inclusive,

        Defendants.
_____/

----oo0oo----

      Plaintiffs James and Dawna Lane brought this action

against defendants Vitek Real Estate Industries Group dba Vitek

1

1  Mortgage Group ("Vitek"), Mortgage Electronic Registration

2  Systems, Inc. ("MERS"), Aurora Loan Services, Inc. ("Aurora"),

3  CitiMortgage, Inc. ("CMI"), and Cal-Western Reconveyance

4  Corporation ("CWRC") alleging various federal and state claims

5  arising out of plaintiffs' mortgage transaction.  Presently

6  before the court are defendants Vitek and CMI and MERS's motions

7  to dismiss the First Amended Complaint ("FAC") pursuant to

8  Federal Rule of Civil Procedure 12(b)(6).

9  I.   Factual and Procedural Background

10       On July 17, 2003, plaintiffs obtained a loan from Vitek

11  to refinance their home, located at 8442 West Hidden Lakes Drive

12  in Granite Bay, California.  (FAC Ex. 1.)  This loan was secured

13  by a Deed of Trust on the property.  (Id.)  The Deed of Trust

14  listed Fidelity National Title Company as trustee, Vitek as

15  lender, and MERS as the nominal beneficiary for the lender and

16  the lender's successors and assigns. (Id.)  At the time of

17  consummation of the loan, defendants allegedly falsely

18  represented to plaintiffs that plaintiffs were qualified for

19  their mortgage and that plaintiffs could pay back the loan even

20  though defendants had not conducted an investigation into

21  plaintiffs' finances.  (Id. ¶ 51.)  The FAC further alleges that

22  Vitek failed to provide plaintiffs with two copies of the

23  statutory right to rescind their loan and received kickbacks to

24  steer plaintiffs into an unaffordable loan.  (Id. ¶ 34.)

25       Plaintiffs began experiencing financial difficulties in

26  October 2008 and eventually fell behind on their loan payments.

27  (Id. ¶ 13.)  CMI allegedly never contacted plaintiffs to discuss

28  loan modification before filing a Notice of Default, and the only

calls plaintiffs ever received from CMI were collection calls. (<u>Id.</u> ¶ 15.)  Plaintiffs called CMI in response to the alleged collection calls and were eventually referred to CMI's Loss Mitigation Department, which provided them with loan modification forms and advised them that a loan negotiator would be assigned to their account.  (<u>Id.</u> ¶ 17.)  Plaintiffs completed the loan modification paperwork and sent it to CMI by fax.  (<u>Id.</u> ¶ 18.) After allegedly calling twice a week for forty-five days and being unable to reach a loan negotiator, plaintiffs were allegedly told by CMI that it lost their paperwork and that they should reapply for loan modification.  (<u>Id.</u>)  Plaintiffs resubmitted their paperwork and allegedly were not contacted by anyone at CMI while they attempted to contact CMI every week for eight months.  (<u>Id.</u>)

In May of 2009, plaintiffs allege that they were told orally that their loan modification was approved at a payment of $2,700 a month of three months that would subsequently become permanent.  (<u>Id.</u> ¶ 18.)  After sending in a payment, plaintiffs were subsequently told that their payment was only partial and that their loan modification was denied.  (<u>Id.</u>)  On September 14, 2009, MERS substituted CWRC as the new trustee under the Deed of Trust.  (CMI Req. Judicial Notice Ex. C.)  On September 15, 2009, MERS assigned its beneficial interest in the Deed of Trust to CMI pursuant to an Assignment of Deed of Trust.  (<u>Id.</u> Ex. D.)  A Notice of Default was filed on plaintiffs' property on September 18, 2009.  (<u>Id.</u> ¶ 16.)  In October, plaintiffs hired a representative to negotiate with CMI.  (<u>Id.</u> ¶ 18.)  CMI allegedly again denied plaintiffs' request for loan modification without

1  negotiation or discussion.  (Id.)

2          A trustee's sale of plaintiffs' property was originally

3  scheduled for February 10, 2010.  (Id. Ex. B.)  On February 9,

4  2010, plaintiffs filed this action and a motion for a temporary

5  restraining order ("TRO") enjoining the foreclosure sale.

6  (Docket Nos. 1, 7.)  The court granted plaintiffs' unopposed

7  motion for a TRO on February 9, 2010, and issued an Order to Show

8  Cause why a preliminary injunction ought not issue in this

9  action.  (Docket No. 11.)  The court vacated the TRO and denied

10  plaintiffs' motion for a preliminary injunction on February 26,

11  2010, after CMI and MERS appeared and opposed the motion.

12  (Docket No. 30.)  Vitek filed a Rule 12(b)(6) motion to dismiss

13  on March 18, 2010.  (Docket No. 33.)  CMI and MERS filed their

14  own motion to dismiss the FAC on March 30, 2010.  (Docket No.

15  36.)  Plaintiffs did not oppose the motions.  Nor did plaintiffs

16  file a statement of non-opposition pursuant to Local Rule 230(c).

17  Therefore, on May 3, 2010, the court vacated the hearing date on

18  Vitek, MERS, and CMI's motions pursuant to Local Rule 230(c), and

19  took the motions to dismiss under submission without oral

20  argument.  (Docket No. 39.)  On May 10, 2010, plaintiffs and

21  Vitek filed a stipulation dismissing Vitek from this action with

22  prejudice.  (Docket No. 41.)

23  II.  Discussion

24          On a motion to dismiss, the court must accept the

25  allegations in the complaint as true and draw all reasonable

26  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

27  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

28  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

4

1  (1972).  To survive a motion to dismiss, a plaintiff needs to

2  plead "only enough facts to state a claim to relief that is

3  plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

4  544, 570 (2007).  This "plausibility standard," however, "asks

5  for more than a sheer possibility that a defendant has acted

6  unlawfully," and where a complaint pleads facts that are "merely

7  consistent with" a defendant's liability, it "stops short of the

8  line between possibility and plausibility." Ashcroft v. Iqbal,

9  129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-

10 57).

11      In general a court may not consider items outside the

12 pleadings upon deciding a motion to dismiss, but may consider

13 items of which it can take judicial notice. Barron v. Reich, 13

14 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

15 notice of facts "not subject to reasonable dispute" because they

16 are either "(1) generally known within the territorial

17 jurisdiction of the trial court or (2) capable of accurate and

18 ready determination by resort to sources whose accuracy cannot

19 reasonably be questioned." Fed. R. Evid. 201.

20      CMI and MERS submitted a request for judicial notice.

21 CMI and MERS request the court take judicial notice of several

22 publically recorded documents related to plaintiffs' mortgage as

23 well as two court documents relating to plaintiffs' bankruptcy

24 proceedings. (Docket No. 36.)  The court will take judicial

25 notice of these documents, since they are matters of public

26 record whose accuracy cannot be questioned. See Lee v. City of

27 Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

28      A.  Standing

5

1     CMI and MERS contend that plaintiffs lack standing to
2  bring this action because their claims are now property of their
3  bankruptcy estate.   On March 12, 2010, plaintiffs filed a
4  Voluntary Chapter 7 Bankruptcy Petition in the United States
5  Bankruptcy Court for the Eastern District of California.   (CMI
6  Req. Judicial Notice Ex. E.)  Upon a declaration of bankruptcy,
7  all petitioner's property becomes the property of the bankruptcy
8  estate.   <u>See</u> 11 U.S.C. § 541(a).   This includes "all legal or
9  equitable interests of the debtor in property," <u>id.</u> at §
10 541(a)(1), which has been interpreted to include causes of
11 action.   <u>See</u> <u>Switchboard Co. v. Westinghouse Elec. Corp.</u>, 789
12 F.2d 705, 707 (9th Cir. 1986); <u>Rowland v. Novus Fin. Corp.</u>, 949
13 F. Supp. 1447, 1453 (D. Haw. 1996) (holding claims under the
14 Truth in Lending Act are included as an interest under §
15 541(a)(1).   Accordingly, a bankruptcy petitioner loses standing
16 for any causes of action and the estate becomes the only real
17 party in interest unless the bankruptcy trustee abandons the
18 claims.   <u>See</u> <u>In re Lopez</u>, 283 B.R. 22, 28-29 (9th Cir. 2002); <u>In</u>
19 <u>re Pace</u>, 146 B.R. 562, 565-66 (9th Cir. 1992).

20     If plaintiffs were in bankruptcy they clearly would
21 lack standing to bring this action absent abandonment of their
22 claims by the bankruptcy trustee.   However, plaintiffs continue
23 to have standing to pursue this case because their bankruptcy
24 petition was dismissed after CMI and MERS filed their motion to
25 dismiss.   <u>See</u> <u>In re Lane</u>, No. 10-25998 at Docket No. 14.

26     B.   <u>Section 2923.5 Wrongful Foreclosure Claim</u>

27     Plaintiffs' FAC purports to state a claim for wrongful
28 foreclosure against all defendants.   Wrongful foreclosure is an

6

action in equity, where a plaintiff seeks to set aside a foreclosure sale.  <u>See</u> <u>Abdallah v. United Sav. Bank</u>, 43 Cal. App. 4th 1101, 1009 (1996); <u>Karlsen v. American Sav. & Loan Ass'n.</u>, 15 Cal. App. 3d 112, 117 (1971).  Plaintiffs primarily base this claim on defendants' alleged failure to comply with the communication requirements set forth in California Civil Code section 2923.5.  Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section."

The FAC only makes the conclusory claim that no one from CMI attempted to contact them to discuss options to pay their loan or assess their financial situation before foreclosure and that there was no personal meeting or telephonic communication between CMI and plaintiffs at any time.  (FAC ¶¶ 15-16, 19, 21.)  However, plaintiffs further state that they called CMI in response to what they characterize as "constant collection calls" and were subsequently referred to CMI's Loss Mitigation Department, which provided plaintiffs with loan modification forms to fill out.  (<u>Id.</u> ¶¶ 17-18.)  These contradictory statements are difficult to reconcile--plaintiffs claim they had no contact with CMI and yet that CMI referred them to a department which then discussed the procedure plaintiffs

would need to follow to obtain a loan modification.

While section 2923.5 requires the borrower to discuss options to prevent foreclosure, it does not require that any loan modification take place.  See Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1113 (E.D. Cal. 2009) (O'Neill, J.).  Although plaintiffs plead they responded to "collection calls" by CMI, the actions allegedly taken by CMI are consistent with an attempt to assess plaintiffs' financial situation and investigate ways to avoid foreclosure.  As plaintiffs admit, CMI provided plaintiffs with loan modification forms and told them a loan negotiator would be assigned to their account.  (FAC ¶ 17.)  While CMI ultimately rejected plaintiffs' application for loan modification after a protracted process, CMI was not required by law to grant plaintiffs' request.  Plaintiffs' allegations against CMI "stop[] short of the line between possibility and plausibility" and cannot survive a motion to dismiss because they are both contradictory and not inconsistent with compliance with section 2923.5.  Iqbal, 129 S. Ct. at 1949.

Plaintiffs base their wrongful foreclosure claim on "numerous improprieties in the assignment, transfer and exercise of power of sale contained in the Deed of Trust, and that . . . CWRC[] is not properly appointed or authorized by the true beneficiary to foreclose upon the Subject Property."  (Id. ¶ 27.)  The FAC contends that CWRC is not authorized to foreclose because none of the parties are beneficiaries of the Note and only have interests in the Deed of Trust, which leaves them without any right to foreclose upon the Deed of Trust.  "Financing or refinancing of real property is generally accomplished in

California through a deed of trust.  The borrower (trustor)
executes a promissory note and deed of trust, thereby
transferring an interest in the property to the lender
(beneficiary) as security for repayment of the loan." Bartold v.
Glendale Fed. Bank, 81 Cal. App. 4th 816, 821 (2000).  A deed of
trust "entitles the lender to reach some asset of the debtor if
the note is not paid." Alliance Mortg. Co. v. Rothwell, 10 Cal.
4th 1226, 1235 (1995).

        The California Court of Appeal for the Fourth District
has explained that California's non-judicial foreclosure statute,
California Civil Code section 2924, is a "comprehensive statutory
framework established to govern nonjudicial foreclosure sales
[and] is intended to be exhaustive." Moeller v. Lien, 25 Cal.
App. 4th 822, 834 (1994); see I.E. Assoc. v. Safeco Title Ins.
Co., 39 Cal. 3d 281 (1985) ("These provisions cover every aspect
of exercise of the power of sale contained in a deed of trust.").
Because of the exhaustive nature of this scheme, California
appellate courts have refused to read any additional requirements
into the non-judicial foreclosure statute.  See Moeller, 25 Cal.
App. 4th at 834; see also, I.E. Assocs. v. Safeco Title Ins. Co.,
39 Cal. 3d 281, 288 (1985).

        Under California Civil Code section 2924(a)(1), a
"trustee, mortgagee or beneficiary or any of their authorized
agents" may conduct the foreclosure process.  Under California
Civil Code section 2924b(4), a "person authorized to record the
notice of default or the notice of sale" includes "an agent for
the mortgagee or beneficiary, an agent of the named trustee, any
person designated in an executed substitution of trustee, or an

1   agent of that substituted trustee."  "Upon default by the

2   trustor, the beneficiary may declare a default and proceed with a

3   nonjudicial foreclosure sale."  Moeller, 25 Cal. App. 4th at 830.

4   There is no stated requirement in California's non-judicial

5   foreclosure scheme that requires a beneficial interest in the

6   Note to foreclose.  Rather, the statute broadly allows a trustee,

7   mortgagee, beneficiary, or any of their agents to initiate non-

8   judicial foreclosure.  Accordingly, the statute does not require

9   a beneficial interest in both the Note and the Deed of Trust to

10  commence a non-judicial foreclosure sale.

11       This interpretation is consistent with the rulings of

12  this court, along with many others, that MERS has standing to

13  foreclose as the nominee for the lender and beneficiary of the

14  Deed of Trust and may assign its beneficial interest to another

15  party.  See, e.g., Morgera v. Countrywide Home Loans, Inc., No.

16  Civ. 2:09-01476 MCE GGH, 2010 WL 160348, at *8 (E.D. Cal. Jan.

17  11, 2010) (collecting cases); Pantoja v. Countrywide Home Loans,

18  Inc., 640 F. Supp. 2d 177 (N.D. Cal. 2009); Castaneda v. Saxon

19  Mortg. Servs., Inc., --- F. Supp. 2d ----, No. Civ. 2:09-01124

20  WBS DAD, 2009 WL 4640673, at *4 (E.D. Cal. Dec. 3, 2009); Bentham

21  v. Aurora Loan Servs., No. C-09-2059 SC, 2009 WL 2880232, at *3

22  (N.D. Cal. Sept. 1, 2009); Kachlon v. Markowitz, 186 Cal. App.

23  4th 316, 334-35 (2008).  MERS properly substituted Cal-Western

24  Reconveyance Corp. as a Trustee and assigned its beneficial

25  interest to CMI on September 15, 2009.  (Oaks Decl. Exs. C, D.)

26       Finally, plaintiffs contend that none of the defendants

27  have the authority to foreclose because their loan was packaged

28  and resold in the secondary market, where it was put into a trust

1   pool and securitized.   The argument that parties lose their

2   interest in a loan when it is assigned to a trust pool has also

3   been rejected by many district courts.   <u>See, e.g.</u>, <u>Bentham</u>, 2009

4   WL 2880232, at *3 ("Other courts . . . have summarily rejected

5   the argument that companies like MERS lose their power of sale

6   pursuant to the deed of trust when the original promissory note

7   is assigned to a trust pool."); <u>Hafiz v. Greenpoint Mortg.</u>

8   <u>Funding, Inc.</u>, No. C-09-1729, 2009 WL 2137393, at *2 (N.D. Cal.

9   Jul. 16, 2009).   Accordingly, the court must grant CMI and MERS's

10  motion to dismiss plaintiffs' wrongful foreclosure claim.

11        C.   <u>Truth in Lending Act Rescission Claim</u>

12             Plaintiffs' second cause of action demands for

13  rescission of their loan under the Truth in Lending Act ("TILA"),

14  15 U.S.C. §§ 1601-1667f.   In a consumer credit transaction where

15  the creditor acquires a security interest in the borrower's

16  principal dwelling, TILA provides the borrower with "a three-day

17  cooling-off period within which [he or she] may, for any reason

18  or for no reason, rescind" the transaction.   <u>McKenna v. First</u>

19  <u>Horizon Home Loan Corp.</u>, 475 F.3d 418, 421 (1st Cir. 2007)

20  (citing 15 U.S.C. § 1635).   A creditor must "clearly and

21  conspicuously disclose" this right to the borrower along with

22  "appropriate forms for the [borrower] to exercise his right to

23  rescind."   15 U.S.C. § 1635(a).

24             If a creditor fails to provide the borrower with the

25  required notice of the right to rescind, the borrower has three

26  years from the date of consummation to rescind the transaction.

27  <u>Id.</u> § 1635(f); <u>see</u> 12 C.F.R. § 226.23(a)(3) ("If the required

28  notice or material disclosures are not delivered, the right to

1  rescind shall expire 3 years after consummation.").  "[Section]
2  1635(f) completely extinguishes the right of rescission at the
3  end of the 3-year period." <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S.
4  410, 412, (1998); <u>see also</u> <u>Miquel v. Country Funding Corp.</u>, 309
5  F.3d 1161, 1164 (9th Cir. 2002) ("[S]ection 1635(f) represents an
6  'absolute limitation on rescission actions' which bars any claims
7  filed more than three years after the consummation of the
8  transaction. (quoting <u>King v. California</u>, 784 F.2d 910, 913 (9th
9  Cir. 1986))); <u>Cazares v. Household Fin. Corp.</u>, 2005 U.S. Dist.
10  LEXIS 39222, at *24-25 (C.D. Cal. 2005) (concluding that, "[i]f
11  certain Plaintiffs did exercise their rights to rescind[ ] prior
12  to the expiration of the three-year limitation period," such
13  facts "would only entitle Plaintiffs to damages, not rescission"
14  (citing <u>Belini v. Wash. Mut. Bank, FA</u>, 412 F.3d 17 (1st Cir.
15  2005))).  Plaintiffs argue that the Complaint, filed February 9,
16  2010, acted to rescind the loan.  (Docket No. 1.)  However,
17  plaintiffs' loan closed on July 13, 2003, putting their notice of
18  rescission well outside of the three-year limitations period.
19  (FAC Ex. 1.)

20       Even if plaintiffs were legally entitled to equitable
21  tolling of their claim, plaintiffs have not alleged any facts in
22  the Complaint that would warrant tolling the statute of
23  limitations.  Plaintiffs simply assert that they were unable to
24  discover defendants' TILA violations until two weeks before the
25  filing of the FAC because defendants "fraudulently concealed
26  those violations . . . ."  (FAC ¶ 34.)  This conclusory
27  allegation is insufficient to establish the necessity for
28  equitable tolling under even the pleading standards of Federal

1   Rule of Civil Procedure 8(a).  See Ashcroft v. Iqbal, 129 S. Ct.

2   1937, 1949 (2009); Cervantes v. Countrywide Home Loans, Inc.,

3   2009 U.S. Dist. LEXIS 87997, at * 13-14 (D. Ariz. 2009) (holding

4   that equitable tolling was not appropriate when plaintiffs simply

5   alleged that defendants "fraudulently misrepresented and

6   concealed the true facts related to the items subject to

7   disclosure").  Accordingly, the court will grant CMI and MERS's

8   motion to dismiss plaintiffs' TILA claim.

9          D.   Real Estate Settlement Procedures Act Claim

10              Plaintiffs' third claim alleges violations of the Real

11  Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§

12  2601-2617.  Plaintiffs allege that defendants violated RESPA in

13  two ways: (1) by failing to respond to plaintiffs' Qualified

14  Written Request ("QWR") and (2) "by receiving money and/or other

15  things of value for referrals of settlement service business . .

16  . including secret kickbacks and yield spread premiums to loan

17  brokers such as Vitek."  (FAC ¶¶ 42-43.)  The court will address

18  each allegation in turn.

19              1.   Failure to Respond to QWR

20              RESPA provides that borrowers must be provided certain

21  disclosures relating to the mortgage loan settlement process.

22  See 12 U.S.C. § 2601.  Section 2605 of RESPA relates to the

23  disclosures and communications required regarding the servicing

24  of mortgage loans, and provides that loan servicers have a duty

25  to respond to QWRs from borrowers asking for information relating

26  to the servicing of their loan.  12 U.S.C. § 2605(e).  Under

27  RESPA lenders of federally related mortgage loans must disclose

28  whether servicing of a loan may be assigned, sold or transferred

1  to loan applicants.  12 U.S.C. § 2605(a).  Additionally,

2  borrowers may send QWRs under RESPA to loan servicers for

3  information relating to the servicing of their loan.  12 U.S.C. §

4  26055(e)(1).  Loan servicers have sixty days after the receipt of

5  a QWR to respond to the borrower inquiry.  12 U.S.C. §

6  2605(e)(2).

7       Plaintiffs allege that they submitted a QWR and that

8  defendants failed to timely respond.  (FAC ¶ 42.)  The FAC does

9  not indicate to whom the QWR was sent or when it was sent.

10  Perhaps this is because plaintiffs claim that they "are not

11  certain at this point in time exactly which entity was and is

12  actually the beneficiary, lender, servicer or trustee" of their

13  loan.  (Id.)  "[U]nder RESPA § 2605, only a loan servicer has a

14  duty to respond to a borrower's inquiries."  Gonzalez v. First

15  Franklin Loan Servs., No. Civ. 1:09-941 AWI GSA, 2010 WL 144862,

16  at *12 (E.D. Cal. Jan. 11, 2010).  Without alleging that MERS or

17  CMI is a loan servicer under RESPA, plaintiffs cannot show that

18  MERS or CMI owed any duty to respond to plaintiffs' QWR.

19  Castaneda, 2009 WL 4640673, at *3; see Blanco v. Am. Home

20  Mortgage Servicing, Inc., No. Civ. 2:09-578 WBS DAD, 2009 WL

21  4674904, at *6 (E.D. Cal. Dec. 4, 2009).  Accordingly,

22  plaintiffs' RESPA claim is insufficient as currently pled.  See

23  Iqbal, 129 S. Ct. at 1949.

24       Plaintiffs' RESPA claim must also allege actual harm to

25  survive a motion to dismiss.  Section 2605(f) imposes liability

26  on servicers that violate RESPA and fail to make the required

27  disclosures.  12 U.S.C. § 2605(f).  Although this section does

28  not explicitly make a showing of damages part of the pleading

standard, "a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." <u>Allen v. United Fin. Mortgage Corp.</u>, 2009 WL 2984170, at *5 (N.D. Cal. Sept. 15, 2009).  For example, in <u>Hutchinson v. Del. Sav. Bank FSB</u>, the court stated that "alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." 410 F. Supp. 2d 374, 383 (D.N.J. 2006).

This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure to respond or give notice has caused them actual harm.  <u>See</u> <u>Singh v. Wash. Mut. Bank</u>, No. 09-2771, 2009 U.S. Dist. LEXIS 73315, *16, 2009 WL 2588885 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because, "[i]n particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees") (citations omitted). Plaintiffs here have not offered any facts to support an inference that defendants' failure to respond to their QWR resulted in pecuniary damages.  The closest plaintiffs get to alleging any harm is stating that they "have suffered and continues [sic] to suffer compensable damages." (FAC ¶ 44.)  Even under a liberal pleading standard for harm, plaintiffs' pleading fails.

        2.   <u>Kickbacks and Illegal Fees</u>

Plaintiffs' second allegation relating to kickbacks similarly fails.  RESPA § 2607 prohibits any person from giving or accepting "any fee, kickback, or thing of value pursuant to

1  any agreement or understanding . . . that business incident to or

2  a part of a real estate service . . . shall be referred to any

3  person," 12 U.S.C. § 2607(a), and from accepting any unearned fee

4  in relation to a settlement service, 12 U.S.C. § 2607(b).

5  Plaintiffs' allegations of kickbacks are completely devoid of any

6  factual enhancement whatsoever.  Plaintiffs do not explain what

7  these kickbacks were, when they occurred, or which defendants

8  received them.  Instead, plaintiffs simply allege the existence

9  of secret kickbacks and lump the actions of defendants together.

10 Defendants should not be forced to guess how they each violated

11 RESPA.  See Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D.

12 Cal. 1988).  Accordingly, plaintiffs' kickback claim "stops short

13 of the line between possibility and plausibility" and must be

14 dismissed.  Iqbal, 129 S. Ct. at 1949.

15      E.   Breach of the Implied Covenant of Good Faith and Fair

16           Dealing Claim

17      "Every contract imposes upon each party a duty of good

18 faith and fair dealing in its performance and its enforcement."

19 Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999)

20 (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2

21 Cal. 4th 342, 371 (1992)).  "A typical formulation of the burden

22 imposed by the implied covenant of good faith and fair dealing is

23 'that neither party will do anything which will injure the right

24 of the other to receive the benefits of the agreement.'"  Andrews

25 v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005)

26 (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).

27 Plaintiffs allege that defendants violated the implied covenant

28 of good faith and fair dealing by "failing and refusing to comply

16

1  with the foreclosure avoidance provisions of Civil Code § 2923.5

2  . . . ." (FAC ¶ 47.)

3          The implied covenant of good faith and fair dealing

4  "cannot impose substantive duties or limits on the contracting

5  parties beyond those incorporated in the specific terms of their

6  agreement." <u>Agosta v. Astor</u>, 120 Cal. App. 4th 596, 607 (2004)

7  (internal citation omitted).  "Absent [a] contractual right . . .

8  the implied covenant has nothing upon which to act as a

9  supplement, and should not be endowed with an existence

10 independent of its contractual underpinnings." <u>Waller v. Truck</u>

11 <u>Ins. Exchange, Inc.</u>, 11 Cal. 4th 1, 36 (1995) (internal citations

12 omitted).  Plaintiffs have not articulated how a failure to

13 comply with section 2923.5 frustrated plaintiffs' rights under

14 the loan contract.  The claim is also inadequate because it lumps

15 all defendants together and fails to explain what actions each

16 individual defendant took to violate the covenant of good faith

17 and fair dealing.  <u>See</u> <u>Gauvin</u>, 682 F. Supp. at 1071.

18 Accordingly, the court must grant CMI and MERS's motion to

19 dismiss plaintiffs' breach of the implied covenant of good faith

20 and fair dealing claim.

21      F.   <u>Fraud Claims</u>

22          Plaintiffs' fifth (fraudulent misrepresentation), sixth

23 (fraudulent concealment), and seventh (civil conspiracy to

24 defraud)[1] causes of action are all species of fraud.  In

25 California, the essential elements of a claim for fraud are "(a)

26 _____

27      [1]   "Civil conspiracy to defraud" is not a separate tort.
   Conspiracy only serves as a theory of liability for claims of
28 fraud.  <u>See</u> <u>Applied Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7
   Cal. 4th 503, 511 (1994).

1  a misrepresentation (false representation, concealment, or

2  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c)

3  intent to defraud, i.e., to induce reliance; (d) justifiable

4  reliance; and (e) resulting damage." In re Estate of Young, 160

5  Cal. App. 4th 62, 79 (2008).  Under the heightened pleading

6  requirements for claims of fraud under Federal Rule of Civil

7  Procedure 9(b), "a party must state with particularity the

8  circumstances constituting the fraud." Fed. R. Civ. P. 9(b).

9  The plaintiffs must include the "who, what, when, where, and how"

10  of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106

11  (9th Cir. 2003) (citation omitted); Decker v. Glenfed, Inc., 42

12  F.3d 1541, 1548 (9th Cir. 1994).  Additionally, "[w]here multiple

13  defendants are asked to respond to allegations of fraud, the

14  complaint must inform each defendant of his alleged participation

15  in the fraud." Ricon v. Reconstrust Co., No. 09-937, 2009 WL

16  2407396, at *3 (S.D. Cal. Aug. 4, 2009) (quoting DiVittorio v.

17  Equidyne Extractive Indus., 822 F.2d 1242, 1247 (2d Cir. 1987)).

18       Plaintiffs' fraud allegations do not even come close to

19  surviving a motion to dismiss.  First, the FAC's fraud claims

20  rarely differentiate between defendants.  Plaintiffs' concealment

21  and conspiracy claims, for example, simply allege that

22  "[d]efendants concealed the fact from [p]laintiffs that they had

23  a right to rescind or cancel the loan" (FAC ¶ 57), and that

24  "[d]efendants represented to [p]laintiffs that they were

25  qualified for their mortgage . . . ." (Id. ¶ 61.)  Defendants

26  should not be forced to guess as to how their conduct was

27  allegedly fraudulent.  See Associated Gen. Contractors of Cal.,

28  Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526

1  (1983); <u>Gauvin</u>, 682 F. Supp. at 1071.  Plaintiffs' other fraud

2  allegations fail to specify so much as when the fraudulent

3  statements alleged were made, who specifically made them, and why

4  they were false.  Plaintiffs' conclusory statements come nowhere

5  close to meeting the pleading standard generally required under

6  Rule 8, let alone the heightened pleading standard of Rule 9(b).

7  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949; <u>Vess</u>, 317 F.3d at 1006.

8         Additionally, the statute of limitations for fraud

9  claims under California law is three years.  Cal. Code Civ. P. §

10  338(d).  As previously discussed, plaintiffs brought this cause

11  of action long after the close of the statute of limitations and

12  have not plead any facts suggesting why they might be entitled to

13  equitable tolling outside of conclusory allegations of fraud.

14  Accordingly, the court will grant defendants' motions to dismiss

15  plaintiffs' fifth, sixth, and seventh fraud causes of action

16  against CMI and MERS.

17         G.    <u>Quiet Title Claim</u>

18         Plaintiffs cannot sustain a quiet title claim as a

19  matter of law.  The purpose of a quiet title action is to

20  establish one's title against adverse claims to real property.  A

21  basic requirement of an action to quiet title is an allegation

22  that plaintiffs "are the rightful owners of the property, i.e.,

23  that they have satisfied their obligations under the Deed of

24  Trust."  <u>Kelley v. Mortgage Elec. Reg. Sys., Inc.</u>, No. C 09-01538

25  SI, --- F. Supp. 2d ----, 2009 WL 2475703, at *7 (N.D. Cal. Aug.

26  12, 2009).  "[A] mortgagor cannot quiet his title against the

27  mortgagee without paying the debt secured."  <u>Watson v. MTC Fin.,</u>

28  <u>Inc.</u>, No. Civ. 2:09-01012 JAM KJM, 2009 WL 2151782 (E.D. Cal.

1  Jul. 17, 2009) (quoting <u>Shimpones v. Stickney</u>, 219 Cal. 637, 649

2  (1934)).  As plaintiffs concede they have not paid the debt

3  secured by the mortgage, they cannot sustain a quiet title action

4  against defendants.

5       H.   <u>California's Unfair Competition Law Claim</u>

6            California's Unfair Competition Law ("UCL"), Cal. Bus.

7  & Prof. Code §§ 17200-17210, prohibits "any unlawful, unfair, or

8  fraudulent business act or practice."  <u>Cal-Tech Commc'ns, Inc. v.</u>

9  <u>L.A. Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999).  This cause

10  of action is generally derivative of some other illegal conduct

11  or fraud committed by a defendant, and "[a] plaintiff must state

12  with reasonable particularity the facts supporting the statutory

13  elements of the violation."  <u>Khoury v. Maly's of Cal., Inc.</u>, 14

14  Cal. App. 4th 612, 619 (1993).

15            Plaintiffs' claim under the UCL is vague and

16  conclusory, simply alleging that "the unlawful acts and practices

17  of [d]efendants alleged herein constitute unlawful business acts

18  and/or practices. . . ."  (FAC ¶ 72.)  Plaintiffs' claim lumps

19  all defendants together and fails to identify any specific act

20  taken by any one of the named defendants.  (<u>See</u> FAC ¶¶ 72-76.)

21  Such vague and conclusory allegations are insufficient to inform

22  defendants as to their liability.  <u>See</u> <u>Associated Gen. Contractors</u>

23  <u>of Cal.,</u>, 459 U.S. at 526; <u>Gauvin</u>, 682 F. Supp. at 1071; <u>see also</u>

24  <u>Lingad v. Indymac Fed. Bank</u>, No Civ. 2:09-02347 GEB JFM, --- F.

25  Supp. 2d ----, 2010 WL 347994, at *11 (E.D. Cal. Jan. 29, 2010).

26  Although plaintiffs cite violations of California Civil Code

27  sections 2923.5 and 2924 in their UCL claim, the court has

28  already found that plaintiffs' section 2923.5 wrongful

1  foreclosure claim is inadequately pled, and plaintiffs have not

2  alleged how defendants purportedly violated section 2924.

3  Accordingly, the court will grant defendants' motion to dismiss

4  plaintiffs' UCL claim.

5       I.   <u>Declaratory and Injunctive Relief</u>

6       Plaintiffs' tenth claim purports to state a cause of

7  action for declaratory and injunctive relief.  Declaratory and

8  injunctive relief are not independent claims, rather they are

9  forms of relief.  <u>See</u> <u>McDowell v. Watson</u>, 59 Cal. App. 4th 1155,

10  1159 (1997) ("Injunctive relief is a remedy and not, in itself a

11  cause of action . . . ." (internal quotation marks omitted)); <u>see</u>

12  <u>also</u>, <u>Nat'l Union Fire Ins. Co. v. Karp</u>, 108 F.3d 17, 21 (2d Cir.

13  1997).  Because plaintiffs' other claims have been dismissed and

14  declaratory and injunctive relief are not causes of action in and

15  of themselves, the court must grant MERS and CMI's motion to

16  dismiss plaintiffs' tenth cause of action as well.

17       J.   <u>Breach of Fiduciary Duty/Aiding and Abetting Claim</u>

18       The elements of a breach of fiduciary duty claim are

19  (1) existence of a fiduciary relationship; (2) breach of the

20  fiduciary duty; and (3) damage proximately caused by that breach.

21  <u>Roberts v. Lomanto</u>, 112 Cal. App. 4th 1553, 1562 (2003).  "The

22  absence of any one of these elements is fatal to the cause of

23  action."  <u>Pierce v. Lyman</u>, 1 Cal. App. 4th 1093, 1101 (1991).

24  Plaintiffs allege that Vitek owed them a fiduciary duty because

25  it was plaintiffs' mortgage broker and MERS interfered with the

26  fiduciary obligations of Vitek by aiding and abetting Vitek in

27  violating its fiduciary duty.  (FAC ¶¶ 84-86.)

28       "Absent special circumstances, a loan transaction is at

21

1   arms-length and there is no fiduciary relationship between the

2   borrower and lender." <u>Rangel v. DHI Mortgage Co., Ltd.</u>, No. CV F

3   09-1035 LJO GSA, 2009 WL 2190210, at *3 (E.D. Cal. July 21, 2009)

4   (quoting <u>Oaks Management Corp. v. Superior Court</u>, 145 Cal. App.

5   4th 453, 466 (2006)).  Plaintiffs claim that MERS can be held

6   secondarily liable for the actions of Vitek because it "aided and

7   abetted" Vitek.  (FAC ¶ 87.)  Even assuming that plaintiffs can

8   establish MERS is liable for aiding and abetting a breach of

9   fiduciary claim as a matter of law, plaintiffs have not alleged

10  sufficient facts to suggest what actions MERS took to aid and

11  abet any of Vitek's alleged violations of its fiduciary duties.

12  Without such facts plaintiffs cannot override the presumption

13  that a lender owes no fiduciary duty to its borrowers.

14  Accordingly, the court must dismiss plaintiffs' breach of

15  fiduciary duty claim.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949.

16       K.   <u>Sanctions</u>

17       If plaintiffs' attorney could not draft a complaint

18  that contained a single claim upon which relief could be granted,

19  he could have at least complied with Local Rule 230(c) and told

20  the court he had no opposition to the granting of defendants'

21  motion.  Instead, counsel ignored the Local Rule and did nothing

22  in response to the motion to dismiss the Complaint.  Counsel's

23  failure to comply with Local Rule 230(c) and timely file any

24  response to Vitek and MERS and CMI's motions to dismiss is

25  inexcusable, and has inconvenienced the court by forcing it to

26  nevertheless examine the motion on the merits.

27       Local Rule 110 authorizes the court to impose sanctions

28  for "[f]ailure of counsel or of a party to comply with these

22

1  Rules." Therefore, the court will sanction plaintiffs' counsel,

2  Stephen C. Ruehmann (also identified in the FAC as Mendstephen C.

3  Ruehmann) $250.00 payable to the Clerk of the Court within ten

4  days from the date of this Order, unless he shows good cause for

5  his failure to comply with the Local Rules.

6         IT IS THEREFORE ORDERED that MERS and CMI's motion to

7  dismiss those claims that apply to MERS and CMI be, and the same

8  hereby is, GRANTED.

9         IT IS FURTHER ORDERED that Vitek's motion to dismiss

10 be, and the same hereby is, DENIED AS MOOT.

11        IT IS FURTHER ORDERED that within ten days of this

12 Order Stephen C. Ruehmann shall either (1) pay sanctions of

13 $250.00 to the Clerk of the Court, or (2) submit a statement of

14 good cause explaining his failure to comply with Local Rule

15 230(c).

16        Plaintiffs have twenty days from the date of this Order

17 to file an amended complaint, if they can do so consistent with

18 this Order.

19 DATED:  May 11, 2010

20

21 _____

22 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28